UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

Deborah A. Fuller,

                                      07-CV-2635
                                      (CPS)

                          Plaintiff,

       - against -

                                      MEMORANDUM
                                      OPINION AND
Michael J. Astrue,                          ORDER
Commissioner of Social Security,

                          Defendant.

-------------------------------------------X

SIFTON, Senior Judge.

       Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)[1], plaintiff

Deborah Fuller ("Fuller") seeks to set aside the determination of

the Commissioner of the Social Security Administration

("Commissioner") that she was not disabled within the meaning of

---

[1] 42 U.S.C. § 405(g) states in relevant part:

> Any individual, after any final decision of the Commissioner of Social
> Security made after a hearing to which he was a party . . . may obtain a
> review of such decision by a civil action commenced within sixty days
> after the mailing to him of notice of such decision or within such
> further time as the Commissioner of Social Security may allow. Such
> action shall be brought in the district court of the United States for
> the judicial district in which the plaintiff resides. . . The court
> shall have power to enter, upon the pleadings and transcript of the
> record, a judgment affirming, modifying, or reversing the decision of
> the Commissioner of Social Security, with or without remanding the cause
> for a rehearing.

42 U.S.C. § 405(g).

       42 U.S.C. § 1383(c)(3) states:

> The final determination of the Commissioner of Social Security after a
> hearing under paragraph (1) shall be subject to judicial review as
> provided in section 405(g) of this title to the same extent as the
> Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

the Social Security Act ("Act") and thereby not eligible for
disability insurance benefits under Title II of the Act or
Supplemental Security Income (SSI) under Title XVI of the Act.
The parties move for judgment on the pleadings pursuant to
Federal Rule of Civil Procedure 12(c).[2]  Plaintiff seeks
reversal of the Commissioner's decision denying her application
for benefits for the period of June 28, 2004 to July 5, 2005, or,
in the alternative, remand for further proceedings.  The
Commissioner seeks affirmance of its final decision and dismissal
of plaintiff's complaint.  For the reasons stated below, the case
is remanded to the Commissioner for further proceedings
consistent with this opinion.

### Background

The following facts are taken from the transcript of the
proceedings before the Social Security Administration ("SSA").

Plaintiff was born on November 1, 1964.  She has completed
two years of college.

Plaintiff has worked as an administrative assistant and/or
medical secretary for more than fifteen years.  Immediately prior
to her alleged period of disability, she worked as a secretary at
NYU Medical Center from January 6, 2003 until June 30, 2004.  On

---

[2] Federal Rule fo Civil Procedure 12(c) states:

    After the pleadings are closed--but early enough not to delay trial--a
    party may move for judgment on the pleadings.

Fed. R. Civ. P. 12(c).

July 5, 2005 she started a part-time job at Camp Friendship as an office coordinator, and since September 2005, she has been working full-time. The benefits she seeks are for the period from June 28, 2004 to July 5, 2005 when she went back to work.

*Medical Evidence*

In May 1994, plaintiff was treated by Dr. Glasser, an internist, at the Murray Hill Medical Group. On May 27, 2004, she underwent an x-ray, which revealed a 4 by 3 cm soft tissue density within the right upper lobe of her lung. On May 28, 2004, she had a CAT scan, which revealed a dense wedge-shaped consolidation within the anterior segment of the right upper lobe of her lung. Dr. Glasser then referred plaintiff to a pulmonologist, Dr. Gail Schattner, MD.

Dr. Schattner saw plaintiff for the first time on June 29, 2004, the beginning date of the period for which she seeks benefits. Plaintiff reported to Dr. Schattner that she had been diagnosed with tuberculosis at six months of age, had a history of asthma and allergies dating back to childhood, and had a recent history of pneumonia.

Dr. Schattner examined plaintiff, noting that plaintiff was wheezing on the right side and determined that plaintiff's asthma was poorly controlled and that the density in the right upper lobe was due to inflammation secondary to prior tuberculosis. She prescribed Advair (asthma medication) and recommended another

CAT scan. The second CAT scan, performed on July 12, 2004, was consistent with the May 28th CAT scan. On July 21, 2004, Dr. Schattner observed that plaintiff's chest was clear with no wheezing. On July 31, 2004, plaintiff had a PET scan, as directed by Dr. Schattner.

After the results of the PET scan showed that the mass could be malignant, Dr. Shattner referred plaintiff to a surgeon, Dr. Crawford, MD, for an examination and removal of the mass in her right lung. On August 9, 2004, Dr. Crawford examined plaintiff. Dr. Crawford found an abnormal lesion in the lateral segment of Fuller's right middle lobe and agreed that the PET scan was consistent with malignancy. Dr. Crawford scheduled Fuller for a partial lobectomy. Dr. Crawford operated on plaintiff on August 17, 2004. The operation consisted of a flexible bronchoscopy, video assisted thoracoscopy, thoracotomy with right middle lobectomy, and intrapleural lysis of adhesions. A biopsy of the mass revealed that it was a necrotizing granulomatous inflammation of uncertain etiology and that there was no evidence of a tumor. Plaintiff remained in the hospital for three days. Her condition on discharge was stable.

On August 24, 2004, plaintiff returned to Dr. Schattner complaining of chest pain, for which she was prescribed Vioxx. Plaintiff reported that her shortness of breath had improved after she started taking Avelox (medication treating bacterial

infections).  On September 2, 2004, she returned complaining of a cough for which she was prescribed Rifampin, Isoniazid, and Pyridoxine to treat presumed tuberculosis.

On September 10, 2004, Dr. Crawford reported that plaintiff's post-operative respiratory status was stable and that her energy was returning to normal.  His examination revealed clear breath sounds bilaterally and appropriate healing of the thoracotomy incisions.

On October 8, 2004, plaintiff reported to Dr. Schattner that her chest pain had resolved.  Dr. Schattner ordered an x-ray on that date.  The x-ray revealed a decreased volume in the right lung which suggested postoperative fibrosis.  On November 5, 2004, plaintiff reported coughing and wheezing to Dr. Schattner, which was attributed to an upper respiratory infection.  She again reported the same symptoms at her November 24, 2004 and January 4, 2005 visits.  She had another chest x-ray which showed no resolution of the changes from plaintiff's childhood tuberculosis.

On March 16, 2005, plaintiff had a consultative examination with internist Dr. Kautilya Puri, M.D.  Plaintiff reported that she experienced shortness of breath and felt tired all the time.  Dr. Puri conducted an examination of plaintiff's chest and lungs, which revealed unremarkable clinical findings.  Dr. Puri noted a post-operative scar with a tender keloid.  He diagnosed plaintiff

with chronic lung disease post lobectomy, shortness of breath, asthma, and a history of tuberculosis exposure.  He determined that there were no limitations to her residual functional capacity but recommended that plaintiff avoid exposure to environmental irritants.

On March 30, 2005, Dr. Schattner ordered a follow-up x-ray, which confirmed a loss of volume in plaintiff's right upper lobe.

On April 12, 2005, plaintiff saw Dr. Glasser for her annual examination.  She complained of wheezing and shortness of breath when walking or climbing.  Dr. Glasser noted that the results of a recent pulmonary function test showed moderate obstruction without bronchodilator response.  He observed that she demonstrated full muscle strength and full ranges of motion throughout her upper and lower extremities.  He diagnosed her with asthma, not otherwise specified, pulmonary tuberculosis, and allergic rhinitis.

On May 24, 2005, plaintiff returned to Dr. Glasser's office complaining of joint pain, knee pain, depression, and anxiety. The examination was unremarkable.

On July 5, 2005, plaintiff returned to work part-time.

A year later, in June 2006, Dr. Glasser completed a pulmonary impairment questionnaire at the request of plaintiff's attorney for submission to the ALJ.  Dr. Glasser noted that he had treated plaintiff's chronic obstructive pulmonary disease

from May 2004 through April 2005.  He reported that her symptoms during that period consisted of shortness of breath, wheezing, and coughing, and that she complained of asthma attacks on a near daily basis.  He diagnosed plaintiff with chronic obstructive pulmonary disease based on the pulmonary function test performed in April 2005.  Dr. Glasser opined that during the relevant period plaintiff could sit for six of eight hours in a work day, she could stand or walk for no more than one hour and only occasionally lift ten pounds and carry five pounds.  He concluded that her symptoms were frequent and severe enough that they would interfere with plaintiff's attention and concentration, require her to take unscheduled breaks several times a day, and be absent from work more than three times a month.

Dr. Harlan Mellk, M.D., a nephrologist, was called by the ALJ at the August 2006 hearing to testify as a medical expert. Dr. Mellk's testimony was based on his review of the medical record and plaintiff's testimony.  Dr. Mellk testified that the pulmonary function tests remarked on by Dr. Glasser showed a mild rather than moderate deficit and that she reported only minimal pain to her treating doctors a couple of months after her surgery.

Dr. Mellk testified that that the period of recovery for the type of surgery that plaintiff experienced is between three to six months, and that Fuller would therefore have had the capacity

to do what she ordinarily did after six months. He testified that by April 2005 she should not have experienced significant shortness of breath in the absence of an asthma attack and that the record did not support the conclusion that she has chronic obstructive pulmonary disease. Dr. Mellk concluded that the symptoms plaintiff described were inconsistent with the medical evidence in the record. According to Dr. Mellk, six months after her surgery plaintiff was capable of performing both light and sedentary exertional activities, sitting for at least six hours and standing or walking for at least six hours in an eight hour work day, as well as occasionally lifting twenty pounds. Dr. Mellk testified that plaintiff needed to avoid exposure to temperature extremes and humidity.

On September 1, 2006, Dr. Schattner wrote a letter confirming that she had treated plaintiff for tuberculosis as well as moderate persistent asthma. Dr. Schattner stated that she initially evaluated plaintiff for treatment of pneumonia in June 2004. In September 2004 she prescribed four drugs for treatment of tuberculosis that were continued through June 2005. Her letter stated that plaintiff had clinically improved and had completed a full therapeutic course of treatment for tuberculosis. With respect to plaintiff's asthma, Dr. Schattner stated that plaintiff had been maintained on a regimen of Singulair and Advair, and required the use of rescue inhalers

three or four times a day. This letter was submitted on January 4, 2007 to the Appeals Council.

*Non-Medical Evidence*

Plaintiff testified at the hearing that starting in January 2004 she began to experience coughing, wheezing, shortness of breath, and fatigue. Her symptoms made it difficult for her to perform her job. She quit her job at the end of June 2004 because of her health and the number of doctor's appointments that she had to attend.

Plaintiff stated that after her surgery she had chest and back pain. She also experienced shortness of breath. On account of these symptoms she could not stand for long periods of time and walked in a hunched over manner. She stated that the pain could be severe. She testified that the symptoms improved within a few months after her surgery but not to the point that she could work again.

Plaintiff stated that during the relevant time period her daily activities consisted of getting her son ready for school and helping him with his homework, preparing simple meals, reading, playing board games, attending medical appointments, going for short walks with her son, socializing with friends and family on the phone, and doing breathing exercises. Plaintiff testified that during the relevant time period her son and mother helped with household chores, such as preparing meals, shopping

for food, and doing laundry, and that she spent most of her time
at home.

*Vocational Expert Testimony*

Vocational expert Andrew Pasternak was called by the ALJ and
testified that plaintiff's past relevant work fell into the
categories of medical secretary and administrative assistant,
which are sedentary skilled positions that do not require
exposure to environmental irritants.

*Procedural History*

On January 4, 2005, plaintiff applied for disability
insurance benefits and Supplemental Security Income seeking
benefits from August 17, 2004.

The Commissioner denied her claim on April 21, 2005.  After
her claim was denied, plaintiff filed a timely request for a
hearing before an administrative law judge ("ALJ").

Prior to the hearing, plaintiff amended the period of time
for which she was seeking benefits to the period June 28, 2004
through July 5, 2005.  On August 28, 2006, plaintiff appeared
with counsel for a hearing before Administrative Law Judge (ALJ)
Kennneth Levin.

Following the hearing, ALJ Levin contacted plaintiff's
previous and present employers to clarify her start and end dates
of work.  Camp Friendship confirmed that she started working
there on July 5, 2005.  NYU Medical Center confirmed that she

worked there from January 6, 2003 until June 30, 2004.

On September 26, 2006, the ALJ issued a written notice of decision, denying plaintiff's claim for disability benefits. The ALJ determined that plaintiff was not disabled under the Social Security Act because plaintiff's impairment did not prevent her from performing her past relevant work during the period of time for which she was seeking benefits.

Plaintiff appealed the ALJ's decision to the Commissioner's Appeals Council. On January 4, 2007, Fuller submitted medical records from Dr. Schattner that had not been submitted to the ALJ, including the September 1, 2006 letter.

On May 16, 2007, the Appeals Council denied review, making the ALJ decision the "final" administrative decision on her application.

## Discussion

*Standard of Review*[3]

A court reviewing a decision of the Commissioner must determine whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Green-Younger v. Barnhart*, 335

---

[3] The standard of review in disability insurance proceedings under Title II of the Social Security Act also applies to supplemental security income proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of supplemental security income claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to disability claims under Title II. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

F.3d 99, 105 (2d Cir. 2003)(quoting *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Social Security Act defines "disability" in relevant part as the "inability to engage in any substantial gainful activity[4] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A)(SSI benefits). Further, an individual will be determined to have a disability "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B)(SSI benefits).

Regulations promulgated by the Social Security Commissioner

---

[4] Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510; *see also* 20 C.F.R. § 404.1572.

set forth a five step process to determine whether an impairment or impairments demonstrate a disability. The Second Circuit has described the five step process as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity[5] to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)(internal quotation marks and citation omitted); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); 20 C.F.R. § 404.1520(a)(4)(I-v); *see also* 20 C.F.R. § 416.920 (SSI benefits).

The Commissioner has an affirmative duty to develop the administrative record even if the claimant is represented by counsel. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

---

[5] Residual Functional Capacity ("RFC") is defined by the SSA as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

*Plaintiff's Ability to Perform Past Relevant Work*

Neither party takes issue with the ALJ's analysis at the first three steps above.  Plaintiff, however, argues that with respect to the fourth step, the ALJ erred in his determination that plaintiff's impairment did not prevent her from doing her past relevant work within the twelve month period of time for which she seeks benefits.  Defendant maintains that the ALJ's determination was supported by the record.

At the fourth step, the ALJ determined, contrary to the conclusion of plaintiff's treating physician, that over the course of an 8 hour work day, plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally, and ten pounds frequently, and sit or stand for at least six hours out of an eight hour work duty.  According to the ALJ, although plaintiff was limited to work environments free of environmental irritants, these limitations did not preclude her from performing her past relevant work as a secretary or medical assistant.

1. Treating Physician Opinion

Plaintiff argues that the Commissioner erred by rejecting the opinion of her treating physician, Dr. Glasser.

"The ALJ is required to accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is supported

by the administrative record." *Schnetzler v. Astrue*, No. 06-CV-5860, 2008 WL 353100, at *13 (E.D.N.Y. 2008).

When controlling weight is not given to a treating physician's medical opinion, the ALJ must consider the following factors to determine how much weight to give the opinion: (1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Furthermore, the ALJ must provide "good reasons" for not crediting the opinion of a plaintiff's treating physician. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2). "Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(internal quotation marks and citation omitted).

An "ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa*, 168 F.3d at 79 (citing *Schaal*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the

treating physician] *sua sponte*."); *Hartnett v. Apfel*, 21
F.Supp.2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives
inconsistencies in a treating physician's reports, the ALJ bears
an affirmative duty to seek out more information from the
treating physician and to develop the administrative record
accordingly")).

Here, the ALJ concluded that "Dr. Mellk's assessment and
conclusions to be very well supported by the evidence, whereas
Dr. Glasser's functional ratings are quite the opposite." Tr. 18.
The ALJ found that "[n]ot a word in Dr. Glasser's notes provides
any support or explanation for the substantial symptoms and
restrictions he claimed that Ms. Fuller was having during the
period relevant to this claim-during most of which period, I
emphasize, he was not even seeing her." Tr. 17. The ALJ
determined that Dr. Glasser had "no basis to say most of the
things he did unless he was merely repeating what the claimant
told him at the time he prepared his report. . ." Tr. 18.

Other than noting that plaintiff did not see Dr. Glasser
throughout the relevant period (presumably because she was in the
hands of specialists including her surgeon and pulmonologist),
the ALJ fails to provide "good reasons" for determining that Dr.
Glasser's opinion is not supported by the record. The ALJ
states that in April 2005 plaintiff "did not come anywhere close
to reporting the severe symptoms she allegedly had been having up

to then and allegedly was still having," Tr. 18, yet Dr.
Glasser's record of the April 2005 examination notes that Fuller
reported the same wheezing and shortness of breath that she
testified to at the hearing.  It is also not apparent from the
record that the ALJ considered Dr. Glasser's statements that his
diagnosis was based on the clinical findings of the April 2005
pulmonary function test or compared Dr. Glasser's findings with
Dr. Schattner's or Dr. Crawford's records.  Nor does the ALJ
explain the basis for his conclusion that Dr. Mellk's testimony
is supported by the evidence.  The ALJ's failure to provide "good
reasons" for his decision to reject Dr. Glasser's opinion
requires remand.  Moreover, if the ALJ believed that Dr.
Glasser's report was incomplete or inadequate he should have
requested additional information prior to rejecting Dr. Glasser's
opinion in favor of the opinion of the medical expert who never
examined plaintiff.  Accordingly, remand for further development
of the record with respect to the treating physician's opinion is
appropriate.

## 2. Credibility Determination

Plaintiff also argues that the ALJ's adverse credibility
determination is not supported by substantial evidence because
the ALJ failed to explain his reasons for rejecting her
complaints about her symptoms.

An ALJ must take into consideration the subjective

complaints of a claimant concerning pain and other symptoms.  20

C.F.R. § 404.1529.  When evaluating a claimant's symptoms, an ALJ

will consider the following factors:

> (I) [the claimant's] daily activities; (ii) the
> location, duration, frequency, and intensity of [the
> claimant's] pain or other symptoms; (iii) precipitating
> and aggravating factors; (iv) the type, dosage,
> effectiveness, and side effects of any medication [the
> claimant] take[s] or ha[s] taken to alleviate [her]
> pain or other symptoms; (v) treatment, other than
> medication, [the claimant] receive[s] or ha[s] received
> for relief of [her] pain or other symptoms; (vi) any
> measures [the claimant] use[s] or ha[s] used to relieve
> [her] pain or other symptoms . . .; and (vii) other
> factors concerning [the claimant's] functional
> limitations and restrictions due to pain or other
> symptoms.

20 C.F.R. § 404.1529(c)(3); *see also* 20 C.F.R. § 416.929(c).

A plaintiff's prior work history should also be considered

when a plaintiff is claiming an inability to work because of a

disability.  SSR 96-7, 61 Fed.Reg. 34,483, at 34,486 (1996)

(instructing that credibility determinations should take account

of "prior work record"); *see also Rivera v. Schweiker*, 717 F.2d

719, 725 (2d Cir. 1983).  "A claimant with a good work record is

entitled to substantial credibility when claiming an inability to

work because of a disability." *Rivera*, 717 F.2d at 725 (citing

*Singletary v. Sec'y of Health, Education and Welfare*, 623 F.2d

217, 219 (2d Cir. 1980)); *see also Schaal*, 134 F.3d at 502.

 Conclusory findings of a lack of credibility will not

suffice; rather, an ALJ's decision "must contain specific reasons

for the finding on credibility, supported by the evidence in the

case record, and must be sufficiently specific to make clear to
the individual and to any subsequent reviewers the weight the
adjudicator gave to the individual's statements and the reasons
for that weight." SSR 96-7p.

The ALJ's credibility determination is entitled to deference
by a reviewing court "[i]f the . . . findings are supported by
substantial evidence . . ." *Aponte v. Sec'y Dep't of Health &
Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation
omitted).

Here, the ALJ determined that plaintiff was not credible
with respect to the alleged time period during which she
experienced symptoms.  The ALJ stated that "[w]hile the claimant
doubtless did have some debilitating conditions and symptoms for
some months after her surgery, it [is] quite clear from her
records that they did not last anywhere near as long as she
claimed in her testimony- nor would they have been expected to
have done so."  Tr. 18.  It is unclear which medical records the
ALJ relied upon in support of his conclusion that plaintiff's
symptoms were resolved at an earlier date than that to which
plaintiff testified.  Rather, it appears from the record that the
ALJ simply adopted Dr. Mellk's opinion that plaintiff's
"subjective complaints and hearing testimony are not consistent
with any of her records . . ." Tr. 17, and discredited
plaintiff's testimony in part because she did not see her

pulmonologist between March 30, 2005 and July 5, 2005, even though in April 2005 she was examined by an internist and in June 2005, Dr. Schattner's medical records state that they spoke by phone. Moreover, while the ALJ summarized plaintiff's testimony about her daily activities during the alleged period of disability, it is unclear whether the ALJ considered this factor. There is also no reference to the plaintiff's work history. Accordingly, because of the ALJ's failure to provide specific reasons for his adverse credibility determination this Court is not in a position to determine whether substantial evidence supports the ALJ's findings.

*Remedy*

Generally, when an ALJ has applied incorrect legal standards, remand is the proper remedy. *See Rosa*, 168 F.3d at 82-83 ("Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence") (citations and internal quotation marks omitted) (alteration in original); *see also Halloran,* 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion . . ."); *Wenk v. Barnhart*, 340 F.Supp.2d 313, 323 (E.D.N.Y. 2004) (remanding case to Commissioner where ALJ did not properly apply treating physician rule or properly assess

plaintiff's credibility).  By contrast, where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits."  *Rosa*, 168 F.3d at 83.

In this case, the record is incomplete and this Court cannot with certainty conclude whether Fuller was indeed disabled on the relevant dates; the evidence requires further weighing, in accordance with the proper standards, and additional investigation by the ALJ.  *See Schaal*, 134 F.3d at 504-05; *Morillo v. Apfel,* 150 F.Supp.2d 540, 547 (S.D.N.Y. 2001).  Accordingly, the case is remanded for further proceedings consistent with this opinion.

## Conclusion

For the reasons set forth above, this case is remanded to the Commissioner for further proceedings consistent with this opinion.  The Clerk is directed to transmit a copy of the within to the parties and the Commissioner.

SO ORDERED.

Dated:    Brooklyn, NY
          June 4, 2008


                    By:  /s/ Charles P. Sifton (electronically signed)
                         United States District Judge